EXHIBIT "A"

Electronically Filed by Superior Court of California, County of Orange, 09/06/2023 04:12:58 PM.
30-2023-01348392-CU-OE-CJC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By G. Galon, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

QWICK, INC., a Delaware limited liability company; and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

TIMOTHY JACOBS

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Orange County Superior Court

Central Justice Center, 700 Civic Center Drive, Santa Ana, CA 92701

30-2023-01348392-CU-OE-CJC

Judge David A. Hoffer

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel S. Latter, 8383 Wilshire Boulevard, Suite 830, Beverly Hills, CA 90211; Tel: (323) 944-0611

DATE: 09/06/2023       David H. Yamasaki, Clerk of the Court      Clerk, by  G. Galon      , Deputy
*(Fecha)*                                                          *(Secretario)*              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [✓] on behalf of *(specify):* Qwick, Inc., a Delaware limited liability company

   under: [✓] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]  [ Save this form ]       [ Clear this form ]

Case 8:23-cv-02009-DOC-JDE   Document 1-3   Filed 10/26/23   Page 3 of 73   Page ID #:20
Electronically Filed by Superior Court of California, County of Orange, 09/06/2023 04:12:58 PM.
30-2023-01348392-CU-OE-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By G. Galon, Deputy Clerk.

Daniel S. Latter (SBN 099848)
Latter Law Group, APC
8383 Wilshire Boulevard
Suite 830
Beverly Hills, CA 90211

T: (323) 944-0611

Attorneys for Plaintiff, Timothy Jacobs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| TIMOTHY JACOBS, | 30-2023-01348392-CU-OE-CJC |
| Plaintiff, | Case No.:        Judge David A. Hoffer |
| v. | **COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF:** |
| QWICK, INC., a Delaware limited liability company; and DOES 1 through 50, inclusive, | |
| Defendants, | 1. Breach of Written Contract);<br>2. Illegal Forfeiture;<br>3. Failure to Pay Overtime;<br>4. Labor Code §203 Penalty;<br>5. Labor Code Section 210 Penalty;<br>6. Labor Code §226 Penalty;<br>7. Wrongful Termination (Common Law);<br>8. Labor Code §1102.5 (Retaliation);<br>9. Declaratory Relief re Restrictive Covenants [CCP § 1060]; and<br>10. Injunctive Relief |

## PARTIES

1.      Plaintiff, Timothy Jacobs ("Plaintiff" herein), is, and at all relevant times was, a resident of Orange County, California.

1

Complaint for Damages, Declaratory and Injunctive Relief

2.      Plaintiff is informed and believes, and based thereon alleges, that Defendant Qwick, Inc., a Delaware limited liability company ("Qwick"), is, and at all relevant times was, a corporation organized and existing under the laws of the State of Delaware, qualified to do business in the State of California, and with its principal place of business located in Maricopa County, Arizona.

3.      Plaintiff is unaware of the true names and capacities of defendants sued herein as Does 1 through 50, inclusive, and therefore sues them by those fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff believes that each of the fictitiously named DOE defendants is indebted to Plaintiff as alleged in this Complaint, and that Plaintiff's rights against each fictitiously-named DOE defendant arise from this indebtedness.

4.      Plaintiff is informed and believes, and upon such information and belief alleges, that at all times herein mentioned, Qwick and the DOE defendants, and each of them, were the agents, servants, alter egos, employees, joint venturers and/or co-partners of each of the other of them and, in doing the acts and in carrying out the wrongful conduct alleged herein, each of Qwick and the DOE defendants acted within the scope of said relationship and with the permission, authority, consent and ratification of each of Qwick and the DOE defendants.

## JURISDICTION

5.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Qwick was doing business in the State of California, such that the exercise of jurisdiction by this Court would not be inconsistent with the Constitution of the State of California and/or the United States of America.

6.      Plaintiff is a resident of the State of California.

2
Complaint for Damages, Declaratory and Injunctive Relief

7.     This Court has jurisdiction over this action pursuant to California Code Civil Procedure Section 410.10.

8.     The total amount in controversy for claims of Plaintiff is more than Twenty-Five Thousand Dollars ($25,000). In addition, Plaintiff asserts no claims under federal law, all causes of action named herein being based exclusively under California law.

## VENUE

9.     Plaintiff is informed and believes, and thereon alleges, that venue in the County of Orange is proper in that all or substantially all of the wrongful acts complained of occurred in Orange County. Venue is proper under California Code of Civil Procedure Section 395 in that Plaintiff's injuries were incurred within this jurisdiction, and the actions that gave rise to Plaintiff's Complaint arose within this jurisdiction.

## GENERAL ALLEGATIONS

10.     By this reference, Plaintiff realleges and incorporates Paragraphs 1 through 9, inclusive, as though fully set forth herein.

11.     In or about September 2021, Plaintiff was hired as a Business Development Manager for Qwick. His primary role, in that capacity, was to contact potential customers for Qwick's services.

12.     Qwick provides a technology platform dedicated to the food and beverage industry. The Qwick platform is meant to serve as a bridge to connect skilled hospitality professionals with industry partners seeking their expertise.

13.     Tim entered into an employment agreement with Qwick, dated September 1, 2021, a true and correct copy of which is attached as Exhibit "A" hereto (the "Employment Agreement").

14.     Tim's base salary under the Employment Agreement was initially set at $103,500. Due to his outstanding performance, Tim received a substantial raise to approximately $124,195

3
Complaint for Damages, Declaratory and Injunctive Relief

1   per annum, effective on or about January 1, 2023.  At the time of his termination, Tim's base

2   salary was $117,900 per annum.

3        15.   In addition to base salary, Tim was entitled to commissions as provided under a

4   Business Development Incentive Plan – 2022, a copy of which is attached as Exhibit "B" hereto

5   (the "Commission Plan").  Under the Commission Plan, Tim was entitled to 10% of net revenue

6   received over a 12-month period starting on the date of the business' first completed post.

7   Commissions are payable quarterly under the Commission Plan, notwithstanding that they can be

8   computed and paid more frequently.  No particular definition of "net revenue" is provided under

9   the Commission Plan.

10       16.   Under the Commission Plan, a termination, including an involuntary termination,

11  purports to cut off the right to commissions for transactions posted after the date of firing.

12  Qwick's actions in cutting off Tim's right to commissions, and the infrequent (quarterly)

13  payment of commissions are each illegal under California law.

14       17.   At the inception of his employment with Qwick, Tim was required to sign

15  Qwick's Employee Confidential Information and Inventions Assignment Agreement, a true and

16  correct copy of which is attached as Exhibit "C" hereto (the "Non-Competition Agreement").

17  The Non-Competition Agreement purports to require that Plaintiff's claims be litigated in

18  Maricopa County, Arizona and be governed by Arizona law.  Plaintiff asserts that California

19  substantive law applies and pursuant thereto, Plaintiff is not obligated to proceed to litigate his

20  claims in Maricopa County or elsewhere in the State of Arizona.

21       18.   Indeed, the Non-Competition Agreement itself is in direct contravention of

22  California law, and is null and void, as it contains numerous covenants that illegally purport to

23  restrict Plaintiff's right to compete in a competitive business, or to solicit customers, employees

24  and third parties (e.g., vendors) subsequent to the termination of Plaintiff's employment.

25       19.   Tim was fired despite being one of the top salespersons in the company.  Qwick

26  instead chose to retain Michael Hearn as a Business Development Manager, though it is believed

27  that he had less experience and success with the company.  It is believed that Mr. Hearn was

28

<div align="center">4</div>
<div align="center">Complaint for Damages, Declaratory and Injunctive Relief</div>

1    retained instead of Tim because of various legitimate concerns that Tim raised repeatedly, in

2    particular with Jill Erickson (Chief Revenue Officer) concerning Qwick's misclassification of its

3    temporary personnel as independent contractors, rather than as employees.

4        20.    This misclassification was illegal and impeded Tim's efforts to secure national

5    accounts for Qwick (including, but not limited to, Marriott, Sodexo and Compass).

6        21.    While Qwick implemented some changes, including with Aramark in the Chicago

7    market, it was hesitant to make any changes in California due to pending litigation in San Diego.

8        22.    Tim continued to be vocal about his concerns over misclassification in California.

9    In April 2023, Kristin Perone (Director of Launch) told Tim that personnel would be classified as

10   employees once the lawsuit was resolved.  This was also confirmed to Tim by Danny Johnson

11   (West Coast Manager).

12       23.    Tim continued to sell in the most difficult market under a 1099 model

13   (California), maintaining a top 3 sales ranking.

14       24.    In April, Tim entered into a Request for Proposal for UCLA, with a contract value

15   of approximately 4.5 to 6 million dollars over 3 years, but UCLA required that personnel be

16   engaged under a W-2 model (i.e., paid as employees, rather than as independent contractors).

17   Once again, Tim was very vocal about the matter.

18       25.    On June 7, 2023, Tim was in a post-launch meeting with Danny Johnson, Evan

19   Russell (Regional Account Manager), Charlotte (VP of Operations) and others, at which the W-2

20   matter was again discussed.

21       26.    From June 7th-8th, the two most prominent advocates of the W-2 model on the

22   executive team (Jill Erickson and Gregory Harrison) were let go by Qwick.  Given Ms.

23   Erickson's termination, Tim was concerned and contacted Kyle Gale, VP of Sales, regarding the

24   W-2 matter.  Mr. Gale was curt and said he would get back to Tim, but he never did.

25       27.    Tim was a top producer for Qwick, was about to work on a Request for Proposal

26   for UCLA, and had just secured 260 new positions for Qwick customer Forefreight.  Little did

27

28

Complaint for Damages, Declaratory and Injunctive Relief

Tim know at this time that he was being terminated, notwithstanding that he was a top producer for Qwick.

28.     It is believed that the basis for his termination was two-fold: (a) Tim became too vocal about Qwick's misclassification of its workers in California; and (b) Qwick intended to take hold of the considerable business Tim secured for the company, and to deprive him of the substantial commissions that Tim would earn had he remained in the company's employ.

29.     Tim's suspicions about why he was terminated were confirmed when he learned that in a July 2023 meeting, Kyle Gale confirmed to attendees that individuals like Tim were terminated due to their "push back," which seemed certain to be a reference to Tim's raising concerns about worker misclassification in violation of California law.

## FIRST CAUSE OF ACTION

### (Claim for Breach of Contract against Qwick and Does 1-5)

30.     By this reference, Plaintiff realleges and incorporates Paragraphs 1 through 29, inclusive, as though fully set forth herein.

31.     The Employment Agreement, including the Commission Plan, constituted a binding written contract between Plaintiff and Qwick.

32.     The Employment Agreement and the Commission Plan were breached by Qwick in certain respects, including as follows:

i.     It failed to pay commissions to Plaintiff, which are believed to be approximately $35,000 through the date hereof, based on commissionable deals that Plaintiff obtained with numerous customers, worth many hundreds of thousands of dollars to Qwick; and

ii.     Plaintiff will be deprived of other commissions due to him, possibly worth hundreds of thousands of dollars from deals that Plaintiff was instrumental in closing; and

33.     Plaintiff did everything he needed to do to perform under the terms of the Employment Agreement and Commission Plan to earn the compensation provided for in this

6

Complaint for Damages, Declaratory and Injunctive Relief

First Cause of Action.  Any failure by Plaintiff to perform was for such matters as were excused as a result of Qwick's nonperformance or by virtue of a waiver of such matters by Qwick.

34.   As a result of such breaches, Plaintiff has been damaged in an amount believed to be not less than Two Hundred Fifty Thousand Dollars ($250,000), subject to proof at trial.

35.   Commissions are deemed "wages" under California Labor Code Section 200(a). Plaintiff further seeks an award of reasonable attorney's fees and costs, consistent with Section 218.5 of the California Labor Code.

## SECOND CAUSE OF ACTION

### (Illegal Forfeiture Against Qwick and Does 6-10)

36.   By this reference, Plaintiff realleges and incorporates Paragraphs 1 through 35, inclusive, as though fully set forth herein.

37.   Qwick's failure to pay commissions that would have been earned under the Employment Agreement, including the Commission Plan, but for the termination of Plaintiff's employment, constitutes an illegal forfeiture under California law.  Plaintiff seeks commissions based on the full or substantial rendering by him of services on his commissionable accounts with Qwick.  Plaintiff did all that he reasonably needed to in order to earn commissions under the Employment Agreement, including the Commission Plan, including for commissions due and payable subsequent to his termination, without limitation, based on commissionable accounts and business opportunities procured during Plaintiff's employment with Qwick.

38.   Plaintiff did everything he needed to do to perform under the Employment Agreement, including the Commission Plan, to entitle him to commissions thereunder, and without regard to the date of his termination.  Any failure by Plaintiff to perform was for such matters as were excused as a result of Qwick's nonperformance or by virtue of a waiver of such matters by Qwick.

Complaint for Damages, Declaratory and Injunctive Relief

39.     The failure of Qwick to pay Plaintiff commissions under the Employment Agreement, including the Commission Plan, constitutes an illegal forfeiture of such compensation, as Plaintiff rendered all services necessary to earn, and thus be entitled to, such compensation.

40.     As a result of such illegal forfeiture, Plaintiff has been damaged in an amount believed to be not less than Two Hundred Fifty Thousand Dollars ($250,000) in unpaid commissions, subject to proof at trial.

## THIRD CAUSE OF ACTION

### (Failure to Pay Overtime Wages Against Qwick and Does 11-15)

41.     By this reference Plaintiff realleges and incorporates Paragraphs 1 through 40, inclusive, as though fully set forth herein.

42.     Tim is subject to IWC Wage Order 4-2001 (the "Wage Order") which regulates the wages, hours and working conditions of persons in professional, technical, clerical, mechanical and similar occupations.

43.     Tim's employment was not exempt from applicable overtime requirements set forth under California law in that (i) Tim had an inside sales position, from which less than half of his compensation was earned from commissions [Section 3(D)], (ii) Tim did not manage anyone, and (iii) Tim's activities would not qualify him as otherwise exempt under the Wage Order.

44.     Tim's normal workweek consisted conservatively of fifty-five (55) hours of work. His normal workday started between 7:30 a.m. and 8:00 a.m. and concluded at roughly 7:00 p.m. (with roughly 1 – 1-1/2 hours of time taken off during the workday for a meal, exercise and rest). Tim typically worked between 3-5 hours over the weekend.

45.     Tim's hourly rate for purposes of computing overtime (based on estimated annual compensation of $205,000 with reference to Tim's most recent paystub) was $98.56. The overtime rate is assumed at $147.84 per hour.

8
Complaint for Damages, Declaratory and Injunctive Relief

46.    Qwick failed to compensate Plaintiff for all of the overtime hours worked and at the appropriate rate, in violation of Labor Code § 510.

47.    The following provisions of the Labor Code are relevant to Plaintiff's overtime work:

Labor Code §510: "Eight hours of labor constitutes a day's work.   Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.   Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee…"

Labor Code § 1194: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees and cost of suit. "

Labor Code  § 1198: "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

48.    By refusing to compensate Plaintiff for overtime wages earned, Qwick violated the California Labor Code, including but not limited to those California Labor Code sections cited above.

49.    As a direct and proximate result of Qwick's unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings for hours or overtime worked on behalf of Qwick in an amount to be established at trial, but believed to be not less than approximately Two Hundred One Thousand Eight Hundred Twenty-Four Dollars ($201,824).

Complaint for Damages, Declaratory and Injunctive Relief

50.     As a further direct and proximate result of Qwick's unlawful conduct, as set forth herein, Plaintiff is entitled to recover interest on the overtime wages earned but not paid, at a rate of 10% per year, as well as attorneys' fees and costs (Labor Code §§ 218.5 and 1194); and the assessment of any other statutory penalties provided by the Labor Code.

## FOURTH CAUSE OF ACTION

### (Labor Code §203 (Waiting Time Penalties) Against

### Qwick and Does 16-20)

51.     By this reference Plaintiff realleges and incorporates Paragraphs 1 through 50, inclusive, as though fully set forth herein.

52.     Qwick ceased to employ Plaintiff on or about June 13, 2023.

53.     At the time that Plaintiff's employment with Qwick ceased, he was owed unpaid commissions and overtime, as alleged herein.

54.     Qwick is liable to Plaintiff for waiting-time penalties pursuant to California Labor Code Section 203, in an amount according to proof at trial, but believed to be not less than approximately Twenty-Three Thousand Six Hundred Fifty-Four Dollars ($23,654), based on a daily rate of Seven Hundred Eighty-Eight Dollars and Forty-Six Cents ($788.46) computed with reference to approximately Two Hundred Five Thousand Dollars ($205,000) in annual compensation earned by Tim at the time of his last day of employment with Qwick.

## FIFTH CAUSE OF ACTION

### (Labor Code §210 Penalties Against Qwick and Does 21-25)

55.     By this reference Plaintiff realleges and incorporates Paragraphs 1 through 54, inclusive, as though fully set forth herein.

56.     Effective January 1, 2020, Section 210 of the California Labor Code was amended to provide that an employer who fails to timely pay wages is responsible for a civil penalty as follows: "(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation,

10
Complaint for Damages, Declaratory and Injunctive Relief

two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

57. Qwick did not timely pay the following gross amount to Plaintiff since January 1, 2020 of not less than Two Hundred Thousand Dollars ($200,000):

58. Each violation (other than the initial violation) was willful or intentional and, as such, subject to a penalty of $200 each plus 25% of the amount unlawfully withheld (i.e., not timely paid).

59. Accordingly, Plaintiff is entitled to a penalty in the amount of more than Fifty Thousand Dollars ($50,000), subject to proof at trial.

## SIXTH CAUSE OF ACTION

### (Failure to Provide Accurate Wage Statements Labor Code §226

### (Statutory Penalty) Against Qwick and Does 26-30)

60. By this reference Plaintiff realleges and incorporates Paragraphs 1 through 59, inclusive, as though fully set forth herein.

61. At all relevant times, Plaintiff was covered by California Labor Code Section 226. Pursuant to California Labor Code Section 226(a), Plaintiff was entitled to receive, semi-monthly or at the time of each payment of wages, an accurate itemized statement showing gross wages, net wages earned, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

62. Qwick failed to provide Plaintiff with accurate itemized statements in accordance with California Labor Code Section 226(a). Plaintiff is informed and believes and thereon alleges that at all during the course of his employment with Qwick, Qwick's practices resulted in the issuance of wage statements that did not show the correct amount of gross wages earned, the correct amount of net wages owed, or the correct number of hours worked at the each applicable hourly rate, and deductions made.

11
Complaint for Damages, Declaratory and Injunctive Relief

63.     Qwick's failure to provide Plaintiff with accurate wage statements was knowing and intentional.  Qwick had the ability to provide Plaintiff with accurate wage statements, but intentionally provided wage statements that Plaintiff knew were not accurate.

64.     As a result of Qwick's conduct, Plaintiff has suffered injury.  The absence of accurate information on his wage statements may have prevented timely challenges to Qwick unlawful pay practices, and has caused difficulty and expense in attempting to reconstruct time and pay records.

65.     Pursuant to California Labor Code Section 226(e), Plaintiff is entitled to recover fifty dollars ($50.00) for the initial pay period in which a violation of California Labor Code Section 226 occurred, and one hundred dollars ($100.00) for each violation of California Labor Code Section 226 in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000).

66.     Pursuant to California Labor Code Section 226(e), Plaintiff is entitled to recover the full $4,000 amount of penalties under California Labor Code Section 226(e), reasonable attorneys' fees and costs of suit.

## SEVENTH CAUSE OF ACTION

### (Wrongful Termination (Common Law) Against Qwick and Does 31-35)

67.     By this reference Plaintiff realleges and incorporates Paragraphs 1 through 66, inclusive, as though fully set forth herein.

68.     Plaintiff is informed and believes, and thereon alleges, that he was fired from his employment with Qwick (i) in an attempt to deprive Plaintiff of substantial commission compensation that was, and otherwise would be, due to him under the terms of the Employment Agreement and the Commission Plan, and under applicable California law and (ii) to silence Tim's persistence in having Qwick comply with California law and classify its temporary labor as employees, rather than as independent contractors, accordingly.

12

Complaint for Damages, Declaratory and Injunctive Relief

69. Plaintiff's termination constituted the tort of wrongful termination, was in violation of public policy protected by the State of California that requires employers to pay earned compensation, including commissions and overtime wages, and protects against retaliation under Section 1102.5 of the California Labor Code. Such termination constituted wrongful termination as provided for consistent with common law in the State of California.

70. As a proximate result of Qwick's wrongful actions against Plaintiff, as alleged above, Plaintiff has been harmed in that he has suffered the loss of the wages, benefits and additional amounts of money Plaintiff would have received from Qwick if he had not been fired. As a result of such termination and consequent harm, Plaintiff has suffered such damages in an amount according to proof, but not less than Two Hundred Fifty Thousand Dollars ($250,000), subject to proof at trial.

71. As a further proximate result of Qwick's wrongful actions against Plaintiff, as alleged above, Plaintiff has been harmed in that he has suffered humiliation, mental anguish, and emotional distress. As a result of such discrimination and consequent harm, Plaintiff has suffered such damages in an amount according to proof, but not less than Two Hundred Fifty Thousand Dollars ($250,000).

72. The above-recited actions of Plaintiff in terminating Plaintiff were a consequence not as a result of performance that warranted termination or other legitimate reason. Rather, Plaintiff is informed and believes, and thereon alleges that he was terminated by Qwick, notwithstanding his superior performance, to prevent Plaintiff from (i) receiving commission compensation due to him or (ii) repeating his opposition to Qwick's mischaracterization of its temporary workers as independent contractors.

73.     The foregoing conduct of Qwick was intended by Qwick to cause injury to Plaintiff or was despicable conduct carried on by Qwick with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights to compensation so as to justify the imposition of punitive damages to punish and set an example of Qwick.  Such acts by Qwick constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Qwick.

## EIGHTH CAUSE OF ACTION

### (Retaliation for Disclosing Violations of Law (Labor Code § 1102.5)

### Against Qwick and Does 36-40)

74.     By this reference Plaintiff realleges and incorporates Paragraphs 1 through 73, inclusive, as though fully set forth herein.

75.     At all times hereto, Labor Code §1102.5 was in full force and effect and was binding upon Qwick. These laws prohibit an employer, or any person acting on behalf of the employer, from adopting, or enforcing any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

14
Complaint for Damages, Declaratory and Injunctive Relief

76.     Further, Labor Code §1102.5 also prohibits an employer, or any person acting on behalf of the employer, from retaliating against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

77.     Throughout his employment until his termination, Plaintiff routinely complained to Qwick's supervisors about misclassification of workers as independent contractors.

78.     Qwick subjected Plaintiff to adverse employment actions in retaliation for the aforementioned, including discrimination, harassment, retaliation and termination.

79.     The damage allegations above, inclusive, are herein incorporated by reference.

80.     The foregoing conduct of Qwick, by and through their managing agents, was intended by Qwick to cause injury to Plaintiff or was despicable conduct carried on by Qwick with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's right to be free from interference by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Qwick.

15
Complaint for Damages, Declaratory and Injunctive Relief

81.      In addition to all other remedies available, Plaintiff is entitled to a civil penalty of $10,000.00 pursuant to Labor Code §1102.5(f), for each of Defendant's violation of Labor Code §1102.5.

## NINTH CAUSE OF ACTION

### (Declaratory Relief (Restrictive Covenants) Against Qwick and Does 41-45)

82.      By this reference Plaintiff realleges and incorporates Paragraphs 1 through 81, inclusive, as though fully set forth herein.

83.      Plaintiff entered into an employment relationship with Qwick on or about September 1, 2021, at which time Plaintiff was required to enter into the Non-Competition Agreement, a true and correct copy of which is attached as Exhibit "C" hereto.

84.      Section 4.1 of the Non-Competition Agreement provides for a covenant not to compete, in applicable part, as follows:

"**4.1 Non-Competition.** In order to protect Confidential Information, Employee will not, during and for a period of 12 months (or if 12 months is found to be unenforceable as a matter of law, then 6 months) after the end of Employee's employment with the Company (whether Employee's termination is with or without good cause or for any or no cause, and whether Employee's termination is effected by either the Company or Employee), directly or indirectly, for Employee or any third party other than the Company:

(a) provide services of any kind for any business within the Geographic Area (as defined below) in connection with the development, manufacture, marketing, or sale of any product or service that Employee worked on in any capacity or in connection with which Employee had access to Confidential Information at any time during Employee's employment with the Company, if the business's product or service (i) competes with any product or service sold or provided by the Company, (ii) competes with any product or service intended to be sold or provided by the Company at the time of the termination of Employee's employment with the Company, or (iii) competed with any product or service sold or

16
Complaint for Damages, Declaratory and Injunctive Relief

provided by the Company at any time during Employee's
employment with the Company;

    (b) solicit sales from any of the Company's customers for
any product or service that (i) competes with any product or
service sold or provided by the Company, (ii) competes with any
product or service intended to be sold or provided by the Company
at the time of the termination of Employee's employment with the
Company, or (iii) competed with any product or service sold or
provided by the Company at any time during Employee's
employment with the Company; or

    (c) entice any vendor, consultant, collaborator, agent, or
contractor of the Company to cease its business relationship with
the Company or engage in any activity that would cause them to
cease their business relationship with the Company; or solicit,
induce, recruit, or encourage any of the Company's employees to
leave their employment, or attempt to solicit, induce, recruit,
encourage, or take away Company employees."

                  ***

**Geographic Area**" means anywhere in the world where the
Company conducts business."

Company, as used in the above-quoted language, as well as throughout the Non-

Competition Agreement, refers to Qwick.

85.    The portions of Section 4.1 quoted in Paragraph 84 above are void and

unenforceable pursuant to Section 16600 of the California Business and Professions Code.  The

purpose of those quoted provisions is to prevent lawful competition within the State of California

and are applicable to Plaintiff under California law.

86.    Other portions of the Non-Competition Agreement are unenforceable under

California law, including, but not necessarily limited to, the terms of Section 5.1 which purports

to apply Arizona law, rather than California law, to Plaintiff's employment, and further, per

<div align="center">17</div>
<div align="center">Complaint for Damages, Declaratory and Injunctive Relief</div>

Section 5.1 of the Non-Competition Agreement, which purports to require that Plaintiff to litigate his claims against Qwick in Maricopa County, Arizona.

87.     Proximate to his termination, Plaintiff was tendered a Separation Agreement and Release Agreement, a true and correct copy of which is attached as Exhibit "D" hereto (the "Separation Agreement").  Interestingly, the Separation Agreement is governed by the laws of the State of California, Qwick giving apparent recognition that to the extent it wants to enforce the release provided for under the Separation Agreement, it needs to have California law apply. Notwithstanding, Section 6 of the Separation Agreement requires that the illegal provisions of the Non-Competition Agreement survive as a condition to Plaintiff's receipt of severance, rendering the Separation Agreement illegal under California law.

88.     An actual controversy has arisen and now exists between Plaintiff and Qwick concerning their respective rights and duties in that Plaintiff contends that the provisions of the Non-Competition Agreement referred to in Paragraphs 84 and 86 of this Complaint are unenforceable, whereas Qwick disputes these contentions and contends that such provisions are enforceable.

89.     Plaintiff desires a judicial determination of his rights and duties, and a declaration as to whether the provisions of the Non-Competition Agreement referred to in Paragraphs 84 and 86 of this Complaint are enforceable.

90.     A judicial determination is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain his rights and duties under these provisions of the Non-Competition Agreement.  Declaratory relief would have the practical effect of informing the Plaintiff and Qwick concerning Plaintiff's future conduct under the Non-Competition Agreement and/or by lessening financial or other burdens caused by the unsettled state of affairs.

18
Complaint for Damages, Declaratory and Injunctive Relief

91.     Declaratory relief is appropriate pursuant to Section 1060 of the California Code of Civil Procedure.

## TENTH CAUSE OF ACTION

### (Injunctive Relief Against Qwick and Does 46-50)

92.     By this reference Plaintiff realleges and incorporates Paragraphs 1 through 91, inclusive, as though fully set forth herein.

93.     The Non-Competition Agreement contains restrictive covenants, non-competition clauses and non-solicitation clauses, as well as clauses specific to California employees, which are null and void, and otherwise unenforceable under California law. Such provisions are contrary to Section 16600 of the California Business & Professions Code, and contrary to California public policy.

94.     Plaintiff seeks to have this Court determine the rights and obligations of the parties under the terms of the Non-Competition Agreement, and to relieve Plaintiff of any obligation under the invalid and unenforceable provisions of the Non-Competition Agreement referred to in the Ninth Cause of Action of this Complaint. Declaratory relief is appropriate pursuant to Section 1060 of the California Code of Civil Procedure.

95.     In connection with such requested relief, Plaintiff further requests that Qwick's wrongful conduct to enforce the illegal terms of the Non-Competition Agreement be enjoined because unless and until enjoined by the order of this Court, Qwick's wrongful conduct will cause great and irreparable injury to Plaintiff as Plaintiff will not be able to freely enter into a competitive business with Qwick and apply his skills in connection therewith, including the solicitation of customers, without illegal interference from Qwick, whether threatened or actual.

19
Complaint for Damages, Declaratory and Injunctive Relief

96.     As a result of Qwick's actions, Plaintiff has and will continue to sustain great and irreparable injury in that Plaintiff will be unable to conduct his normal trade and business, or seek or hold employment in the State of California for which he is suitable.

97.     Plaintiff cannot be fully compensated in damages, is without an adequate remedy at law because the exact amount of damage Plaintiff will sustain will be difficult, if not impossible to determine. Moreover, Plaintiff might be forced to institute a multiplicity of lawsuits to obtain adequate compensation for his injuries.

98.     As a proximate result of Qwick's wrongful conduct, Plaintiff's business has been damaged in a sum of not less than Two Hundred Fifty Thousand ($250,000), subject to proof at trial. Plaintiff will be further damaged in a like manner so long as Qwick's conduct continues. The full amount of this damage is not now known to Plaintiff.

99.     Plaintiff seeks a temporary, preliminary, and permanent injunction barring Qwick from enforcing those certain terms and provisions of the Non-Competition Agreement which violate California law and which are determined to improperly restrain Plaintiff from conducting a lawful trade, business and employment, all as referred in the Ninth and Tenth Causes of Action of this Complaint.

**WHEREFORE, Plaintiff prays for judgment as follows:**

As to the **First Cause of Action:**

1.  For unpaid commissions in an amount not less than $250,000 according to proof at trial;

2.  Interest according to law;

3.  Attorney's fees and costs pursuant to California Labor Code Section 218.5;

4.  Costs of suit incurred; and

5.  Such further relief that the Court determines to be just and proper.

As to the **Second Cause of Action:**

1.  For unpaid commissions in an amount not less than $250,000 according to proof at trial;

2.  Interest according to law;

3.  Attorney's fees and costs pursuant to California Labor Code Section 218.5;

4.  Costs of suit incurred; and

5.  Such further relief that the Court determines to be just and proper.

As to the **Third Cause of Action:**

1.  For unpaid overtime in an amount not less than $201,824 according to proof at trial;

2.  Interest according to law;

3.  Attorney's fees and costs pursuant to California Labor Code Sections 218.5 and 1194;

4.  Costs of suit incurred; and

5.  Such further relief that the Court determines to be just and proper.

As to the **Fourth Cause of Action:**

1.  The assessment of a statutory penalty in the amount of $23,654, or such other amount, as appropriate, according to proof at trial;

2.  Costs of suit incurred and

3.  Such further relief that the Court determines to be just and proper.

As to the **Fifth Cause of Action:**

1.  The assessment of a statutory penalty in the amount of $50,000, or such other amount, as appropriate, according to proof at trial;

2.  Costs of suit incurred and

3.  Such further relief that the Court determines to be just and proper.

Complaint for Damages, Declaratory and Injunctive Relief

As to the **Sixth Cause of Action:**

1. The assessment of a statutory penalty in the amount of up to Four Thousand Dollars ($4,000), consistent with California Labor Code Section 226(e);

2. Attorney's fees and costs according to law;

3. Costs of suit incurred and

4. Such further relief that the Court determines to be just and proper.

As to the **Seventh Cause of Action:**

1. For a money judgment for mental pain and anguish and emotional distress and physical pain, according to proof;

2. For a money judgment representing compensatory damages including lost past and future wages, commissions and all other sums of money, including employment benefits, together with interest on said amounts, and any other economic injury to Plaintiff, in an amount not less than $500,000, according to proof;

3. For an award of punitive damages against Qwick;

4. Attorney's fees and costs according to law;

5. Costs of suit incurred and

6. Such further relief that the Court determines to be just and proper.

As to the **Eighth Cause of Action:**

1. For a money judgment for mental pain and anguish and emotional distress and physical pain, according to proof;

2. For a money judgment representing compensatory damages including lost past and future wages, commissions and all other sums of money, including employment benefits, together with interest on said amounts, and any other economic injury to Plaintiff, in an amount not less than $500,000, according to proof;

3. For an award of punitive damages against Qwick;

Complaint for Damages, Declaratory and Injunctive Relief

4. Attorney's fees and costs according to law;
5. Costs of suit incurred and
6. Such further relief that the Court determines to be just and proper.

As to the **Ninth Cause of Action:**

1. That the Court issue a declaration of the rights and obligations of the parties under the Non-Competition Agreement; specifically a declaration that Plaintiff is relieved of any restrictive covenant set forth in the Non-Competition Agreement as referred to in Paragraphs 84 and 86 of this Complaint, and any other restriction set forth in the Non-Competition Agreement that is contrary to California law, and that the same be declared null and void, and that Plaintiff is permitted to practice his chosen profession, and that Plaintiff be permitted to do business with customers that have done and/or currently do business with Qwick, if such customers so choose, including, but not limited to, customers that were obtained and/or serviced by Plaintiff while engaged by Qwick;
2. Costs of suit incurred; and
3. Such further relief that the Court determines to be just and proper.

As to the **Tenth Cause of Action:**

1. That the Court issue a declaration of the rights and obligations of the parties under the Non-Competition Agreement; specifically a declaration that Plaintiff is relieved of any restrictive covenant set forth in the Non-Competition Agreement as referred to in Paragraphs 84 and 86 of this Complaint, and any other restriction set forth in the Non-Competition Agreement that is contrary to California law, and that the same be declared null and void, and that Plaintiff is permitted to practice his chosen profession, and that Plaintiff be permitted to do business with customers that have done and/or currently do business with Qwick, if such customers so choose,

including, but not limited to, customers that were obtained and/or serviced by Plaintiff while engaged by Qwick;

2.  That the Court issue a temporary, preliminary and permanent injunction barring Qwick from enforcing those certain terms and provisions of the Non-Competition Agreement which violate California law and which are determined to improperly restrain Plaintiff from conducting a lawful trade, business and employment;

3.  Costs of suit incurred; and

4.  Such further relief that the Court determines to be just and proper.

Dated: August 25, 2023                                   LATTER LAW GROUP, APC

By: _____

Daniel S. Latter, Attorneys for Plaintiff, Timothy Jacobs

Complaint for Damages, Declaratory and Injunctive Relief

Exhibit A



September 1, 2021

Dear Timothy Jacobs,

Qwick Inc., a Delaware Corporation (the "Company"), is pleased to offer you employment with the Company on the terms described below. This offer of employment is conditioned on your satisfactory completion of certain requirements, as more fully explained in this letter. Your employment is subject to the terms and conditions set forth in this letter.

• **Position.** You will start in a full-time position of Los Angeles Business Development Manager. In this capacity, you will perform duties and responsibilities that are reasonable and consistent with such position as may be assigned to you from time to time. You will report directly to Dustin Jones. You agree to devote your full business time, attention, and best efforts to the performance of your duties and to the furtherance of the Company's interests.

• **Compensation.** In consideration of your services, you will be paid $103,500.00 per Year, payable in accordance with the standard payroll practices of the Company and subject to all withholdings and deductions as required by law. Future adjustments in compensation, if any, will be made by the Company in its sole and absolute discretion. This position is an exempt position, which means you are paid for the job and not by the hour.

• **Benefits.** As a regular employee of the Company you will be eligible to participate in Medical, Dental, and Vision benefits.

• **Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. Any contrary representations which may have been made to you are superseded by this offer. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and the Company.

• **Contingent Offer.** The Company reserves the right to conduct background and/or reference checks on all prospective employees. Your job offer is contingent upon clearance of such background and/or reference check as applicable. This offer will be withdrawn if any of the above conditions are not satisfied.

• **Company Policies and Additional Agreements.** As an employee of the Company, you will be expected to abide by and adhere to the Company's rules and standards. As a condition of your employment, you will be subject to all applicable employment and other policies of the Company. You will also agree to execute any additional agreements required by the Company at the start of your employment. You further agree that at all times during your employment (and afterwards as applicable), you will be bound by, and will fully comply with, these additional agreements.

• **Continuing Obligations.** By signing this letter, you confirm with the Company that you are under no contractual or other legal obligations that would prohibit you from performing your duties with the Company. You further confirm that you will not remove or take any documents or proprietary data or materials of any kind, electronic or otherwise, with you from your current or former employer to the Company without written authorization from your current or former employer, nor will you use or disclose any such confidential information during the course and scope of your employment with the Company.

• **Entire Agreement.** This letter and other accompanying documents supersede and replace any prior understandings or agreements, whether oral, written or implied, between you and the Company regarding the matters described in this letter.

If you wish to accept this offer, please sign and date below. As required, by law, your employment with the Company is also contingent upon your providing legal proof of your identity and authorization to work in the United States. This offer, if not accepted, will expire at the close of business on September 8, 2021.
We look forward to having you join us no later than September 21, 2021.

Very truly yours,

By: *Jamie Baxter*

  (Signature)

Name: Jamie Baxter

Title: CEO

ACCEPTED AND AGREED:

Timothy Jacobs

(PRINT EMPLOYEE NAME)

*Timothy M. Jacobs*

(Signature)

September 1, 2021

Date

Anticipated Start Date: September 21, 2021

Exhibit B

DocuSign Envelope ID: BEED3C21-7D18-4B9F-91E9-671D6F51A4AF

# QWICK

# Business Development Incentive Plan - 2022

Revised 3/11/2022

Date
Name

The Qwick BDM incentive plan is effective January 1, 2022 and will remain in effect until otherwise modified or amended by Qwick. The plan is designed to drive focus on targeting the following business types:

- Medium and large businesses that are repeat users of Qwick
- Quality businesses - i.e. ability to have a high Business Qwick Score, pay top of market, quality shifts, treat our Pros well, etc

Goals:

- 5 SU per week
- 3 FP per week
- 60% conversion rate SU:FP
- Market forecast achievement
- $2M gross revenue contribution annually
- $500k net revenue contribution

Model:

- Incentive comp will be paid on all businesses that you sign up in your market that complete a First Post. You will receive 10% of net revenue for 12 months from the date of the businesses first completed post
- To qualify for incentive comp, businesses must be properly tracked in the CRM and identify you as the initiator of communications and business owner
- Subsidations may impact the calculation of net revenue
- If a business has multiple locations each location will be counted individually but they must have separate accounts for tracking purposes
- Commissions are paid quarterly after the business provides payment form and makes first payment. Commissions may be withheld if business does not pay timely and according to our TOU
- To qualify for commissions, all businesses must have a payment method inserted in the Qwick dashboard or be approved for net terms according to our net terms guideline, and have both an assigned category and lead source in the CRM
- All businesses requiring a contract separate from our website TOU must have a countersigned agreement stored at the deal level in the CRM and a saved version in the agreements folder

DocuSign Envelope ID: BEED3C21-7D18-4B9F-91E9-671D6F51A4AF

# QWICK

**Territory Alignment:**

- Sell within your territory – Location must be in your market limits and within our approved zip codes
- Local units of national accounts are assigned to the local BDM
- If a local unit of a national account refers the BDM into a unit in a different market it is assigned to the local BDM
- If there is no BDM in that market it is assigned to the BDM Leader
- If a BDM closes a business that is HQ in a different market they earn credit for the local business and should hand off other locations to the local BDM.  There will be exceptions to this but they must be approved by the VP of sales or higher (i.e. Major Food group has one centralized contact who posts for New York and Miami). In this case the Miami BDM does not get credit because they did not sell i.
- You only get credit for business you sell
- Inbound and organics will be routed to inside sales.  If your name is on the business in Hubspot and you have been working the business the business will be handed over to the local BDM.  (Must be correspondence with the business recorde in Hubspot within the past 30 days) If the business is larger than our SMB definition and they require a meeting it will be assigned to the local BDM.

**Definitions:**

- First Post:  Customer signs up, completes at least 1 shift, with a payment method on file, and has paid their initial invoice

**Overview Of the Sales Incentive Plan**
Commissions will be calculated and paid out quarterly on the last payroll of the month following the quarter.  You will be paid on all businesses that you are responsible for signing up and properly onboarding.

**Termination of Employment** – Upon voluntary or involuntary termination of  employment with Qwick, Incentive comp will be paid on transactions dated prior to the termination date only and will be paid on the normal quarterly schedule for businesses that have paid.

Future adjustments in compensation, if any, will be made by Qwick in its sole and absolute discretion.

Qwick.

By: Name    Timothy Jacobs

Signature:

DocuSigned by:
*Timothy Jacobs*
6E5E9C16DA694BE...

DocuSign Envelope ID: BEED3C21-7D18-4B9F-91E9-671D6F51A4AF

QWICK

Title: Business Development Manager

Date:        3/11/2022

By: Jill Erickson

Signature:

Title: Chief Marketplace Officer

Date:

# Exhibit C

## EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS ASSIGNMENT AGREEMENT

In consideration of the employment or continued employment by QWICK, INC, a Delaware Corporation (the "Company"), of [Timothy Jacobs] (the "Employee") as an employee, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Company and Employee hereby agree to the terms of this Confidential Information and Inventions Assignment Agreement (this "Agreement"), effective as of the first day of Employee's service to the Company (the "Effective Date"), as follows:

### 1. CONFIDENTIAL INFORMATION PROTECTIONS.

**1.1   Nondisclosure; Recognition of Company's Rights.** At all times during and after the period of Employee's employment, Employee will (a) hold all Confidential Information (as defined below) in strict trust and confidence, (b) refrain from using or permitting others to use Confidential Information in any manner or for any purpose not expressly permitted or required by this Agreement and (c) refrain from disclosing and permitting others to disclose any Confidential Information to any third party without obtaining the express prior written consent of the Company's Manager (the "Manager"), which consent shall be granted or denied on a case-by-case basis in the sole discretion of the Company. Employee will obtain Company's written approval before publishing or submitting for publication any material (written, oral, or otherwise) that relates to Employee's work for Company and/or incorporates any Confidential Information. Employee hereby assigns to Company any rights Employee may have or acquire in any and all Confidential Information and recognizes that all Confidential Information shall be the sole and exclusive property of Company and its assigns.

**1.2   Confidential Information.** The term "Confidential Information" shall mean any and all technical and non-technical confidential knowledge, data or information related to Company's Business (as defined below), including without limitation: (a) trade secrets, inventions, ideas, processes, computer source and object code, data, formulae, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques; (b) information regarding products, services, plans for research and development, marketing and business plans, budgets, financials statements, contracts, prices, suppliers and customers; (c) information regarding the skills and details of Company's employees, contractors and any other service providers of Company; and (d) the existence of any business discussions, negotiations or agreements between Company and any third party.

**1.3   Third Party Information.** Employee understands that Company has received and in the future will receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.

During and after the term of Employee's employment, Employee will hold Third Party Information in strict confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for Company) or use, Third Party Information, except in connection with Employee's work for Company or unless expressly authorized by Company in writing.

**1.4   No Improper Use of Information of Prior Employers and Others.** Employee represents that its employment by Company does not and will not breach any agreement with any current or former employer or client, including any non-compete agreement or any agreement to keep in confidence or refrain from using information acquired by Employee prior to Employee's employment by Company. Employee further represents that it has not entered into, and will not enter into, any agreement, either written or oral, in conflict with Employee's obligations under this Agreement. During Employee's employment by Company, Employee will not improperly make use of, or disclose, any information or trade secrets of any former employer or other third party, nor will Employee bring onto the premises of Company or use any unpublished documents or any property belonging to any current or former employer or other third party, in violation of any lawful agreements with that employer or third party. Employee will use in the performance of its duties only information that is generally known and used by persons with training and experience comparable to Employee's, is common knowledge in the industry or otherwise legally in the public domain, or is otherwise provided or developed by Company.

**1.5   Standard of Care.** Employee will protect the Confidential Information from unauthorized use, access, or disclosure in the same manner as Employee protects Employee's own confidential or proprietary information of a similar nature, and with no less than the greater of reasonable care and industry-standard care.

**1.6   Reverse Engineering.** Unless (and, then, only to the extent) expressly authorized by Company to do so, Employee will not attempt to reverse engineer, de-encrypt, or otherwise derive the design, internal logic, structure or inner workings (including algorithms and source code) of any software, products, models, prototypes, or other items provided by Company that use, embody, or contain

Confidential Information.

**1.7   Exceptions.**   Employee's obligations under the section titled "Nondisclosure; Recognition of Company's Rights" will terminate with respect to any particular information that Employee can prove, by clear and convincing evidence, (a) Employee lawfully knew prior to Company's first disclosure to Employee, (b) a third party rightfully disclosed to Employee free of any confidentiality duties or obligations, or (c) is, or through no fault of Employee has become, generally available to the public. Additionally, Employee will be permitted to disclose Confidential Information to the extent Company has expressly approved of such disclosure in writing, or is required by law or court order, provided that Employee immediately notifies Company in writing of such required disclosure and cooperates with Company, at Company's reasonable request and expense, in any lawful action to contest or limit the scope of such required disclosure, including filing motions and otherwise making appearances before a court.

**1.8   Removal; Return.**   Upon Company's request and upon any termination or expiration of this Agreement, Employee will promptly (a) return to Company or, if so directed by Company, destroy all tangible embodiments of the Confidential Information (in every form and medium), (b) permanently erase all electronic files containing or summarizing any Confidential Information, and (c) certify to Company in writing that Employee has fully complied with the foregoing obligations.

**2.   INVENTIONS.**

**2.1   Definitions.**   As used in this Agreement, the term **"Invention"** means any ideas, concepts, information, materials, processes, data, programs, know-how, improvements, discoveries, developments, designs, artwork, formulae, other copyrightable works, and techniques and all Intellectual Property Rights in any of the items listed above. The term **"Intellectual Property Rights"** means all trade secrets, copyrights, trademarks, mask work rights, patents and other intellectual property rights recognized by the laws of any jurisdiction or country. The term **"Moral Rights"** means all paternity, integrity, disclosure, withdrawal, special and any other similar rights recognized by the laws of any jurisdiction or country.

**2.2   Prior Inventions.**   Inventions that were conceived, reduced to practice, created, derived, developed, or made by Employee, alone or jointly with others, prior to Employee's employment by Company and to which Employee retains any ownership rights or interest are referred to herein as **"Prior Inventions."** Employee has listed, on Exhibit A attached hereto, all Prior Inventions that relate in

any way to Company's Business or demonstrably anticipated research and development (the **"Prior Company-Related Inventions"**). If nothing is listed on Exhibit A, Employee represents that there are no Prior Company-Related Inventions at the time of signing this Agreement. Employee agrees that it will not incorporate, or permit to be incorporated, in any Company Inventions (as defined below), without express prior written consent of the Manager, any Prior Inventions. Notwithstanding the foregoing, if, in the course of Employee's employment by Company, Employee incorporates a Prior Invention into a Company process, machine or other work, Employee hereby grants Company a non-exclusive, perpetual, fully-paid and royalty-free, irrevocable and worldwide license, with rights to sublicense through multiple levels of sublicensees, to reproduce, make derivative works of, distribute, publicly perform, and publicly display in any form or medium, whether now known or later developed, make, have made, use, sell, import, offer for sale, and exercise any and all present or future rights in, such Prior Invention. If such rights cannot be validly granted to Company without the consent of a third party, Employee will use its best efforts to obtain such consent (at Employee's expense) and will indemnify and hold harmless Company and its affiliates, employees, and agents from and against all liabilities, losses, damages, costs, and expenses (including attorneys' fees) arising from Employee's failure to obtain such consent.

**2.3   Assignment of Company Inventions.**   Inventions assigned to Company pursuant to this section or to a third party as directed by Company are collectively referred to in this Agreement as **"Company Inventions."** Employee hereby assigns and agrees to assign in the future (effective as of the later of the date of this Agreement or when any such Inventions or Intellectual Property Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to Company all right, title, and interest in and to any and all Inventions (and all Intellectual Property Rights with respect thereto) made, conceived, reduced to practice, or learned by Employee, either alone or with others, in connection with or related to the Company's Business or arising out of Employee's employment by Company, both prior to and after the date of this Agreement. All such Inventions that are protected by copyright are "works made for hire" for which Company is the "author" (as such first quoted term is defined by and such second quoted term given meaning by the United States Copyright Act of 1976, as amended). Company will exclusively own the copyright in all such works upon their creation. Any assignment of Inventions (and all Intellectual Property Rights with respect thereto) hereunder includes an assignment of all Moral Rights relating to Company Inventions. To the extent such Moral Rights cannot be assigned to Company as a matter of law and to the extent the following is allowed by the laws in any country where Moral Rights exist, Employee hereby

unconditionally and irrevocably waives the enforcement of such Moral Rights and all claims and causes of action of any kind against Company or related to Company's customers with respect to such rights. Employee further acknowledges and agrees that neither its successors-in-interest nor legal heirs retain any Moral Rights in any Company Inventions (and any Intellectual Property Rights with respect thereto). For purposes of Sections 1 and 2 of this Agreement, the "**Business**" of the Company shall mean the business of the Company on and after the date hereof, including, without limitation, the business of developing, marketing, distributing, selling or providing technology platforms related to on-demand economy workforce for the hospitality industry and related services and products.

**2.4     Trademarks and Trade Names.** Without limiting the generality of the foregoing, Employee will have no interest in any trademark, service mark, or trade name (collectively, "**Mark**") used by Employee in the course of Employee's employment by the Company. Company will be the sole and exclusive owner of all right, title, and interest in and to all such Marks. Any and all use of such Marks by Employee will be deemed made by Company for the purposes of trademark registration and will inure solely to the benefit of Company for such purposes. Employee will not contest, oppose, or challenge Company's ownership of such Marks, or do anything to impair Company's ownership of rights in such Marks. Employee will not create, adopt, or use a corporate name, trade name, trademark, or any other designation that includes any of Company's Marks or a term confusingly similar to any of Company's Marks. In particular, Employee will not register, or attempt to register, in any jurisdiction worldwide any of Company's Marks or a term confusingly similar to any of Company's Marks.

**2.5     Obligation to Keep Company Informed.** Employee will disclose promptly in writing to Company any Inventions related to the Business conceived, reduced to practice, created, derived, developed, or made by Employee during the period of Employee's employment by the Company and for three (3) months thereafter, whether or not Employee believes such Inventions are subject to this Agreement, to permit a determination by Company as to whether or not such Inventions are or should be considered Company Inventions. Company will receive that information in confidence.

**2.6     Government or Third Party.** Employee agrees that, as directed by Company, Employee will assign to a third party, including without limitation the United States, all right, title, and interest in and to any particular Company Invention.

**2.7     Enforcement of Intellectual Property Rights and Assistance.** During and after the period of Employee's employment and at Company's request and

expense, Employee will assist Company in every proper way, including consenting to and joining in any action, to obtain and enforce United States and foreign Intellectual Property Rights and Moral Rights relating to Company Inventions in all countries. If Company is unable to secure Employee's signature on any document needed in connection with such purposes, Employee hereby irrevocably designates and appoints Company (including any of it duly authorized officers and agents) as its agent and attorney in fact, which appointment is coupled with an interest, to act on Employee's behalf to execute and file any such documents and to do all other lawfully permitted acts to further such purposes with the same legal force and effect as if executed by Employee.

**2.8     Incorporation of Software Code.** Employee agrees that it will not incorporate into any Company software or otherwise deliver to Company any software code licensed under the GNU General Public License or any other license that, by its terms, requires or conditions the use or distribution of such code on the disclosure, licensing or distribution of any source code owned or licensed by the Company.

**3.     RECORDS.** Employee agrees to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that is required by Company) of all Inventions made by Employee during the period of Employee's employment by Company, which records shall be available to, and remain the sole property of, Company at all times.

**4.     NON-COMPETITION AND TRADE SECRETS.**

**4.1     Non-Competition.** In order to protect Confidential Information, Employee will not, during and for a period of 12 months (or if 12 months is found to be unenforceable as a matter of law, then 6 months) after the end of Employee's employment with the Company (whether Employee's termination is with or without good cause or for any or no cause, and whether Employee's termination is effected by either the Company or Employee), directly or indirectly, for Employee or any third party other than the Company:

(a)     provide services of any kind for any business within the Geographic Area (as defined below) in connection with the development, manufacture, marketing, or sale of any product or service that Employee worked on in any capacity or in connection with which Employee had access to Confidential Information at any time during Employee's employment with the Company, if the business's product or service (i) competes with any product or service sold or provided by the Company, (ii) competes with any product or service intended to be sold or provided by the Company at the time of the termination of Employee's

employment with the Company, or (iii) competed with any product or service sold or provided by the Company at any time during Employee's employment with the Company;

(b)    solicit sales from any of the Company's customers for any product or service that (i) competes with any product or service sold or provided by the Company, (ii) competes with any product or service intended to be sold or provided by the Company at the time of the termination of Employee's employment with the Company, or (iii) competed with any product or service sold or provided by the Company at any time during Employee's employment with the Company; or

(c)    entice any vendor, consultant, collaborator, agent, or contractor of the Company to cease its business relationship with the Company or engage in any activity that would cause them to cease their business relationship with the Company; or solicit, induce, recruit, or encourage any of the Company's employees to leave their employment, or attempt to solicit, induce, recruit, encourage, or take away Company employees.

The covenants contained in this section will be construed as a series of separate covenants, one for each country, city, state, or similar subdivision in any Geographic Area. If, in any judicial proceeding, a court refuses to enforce any of these separate covenants (or any part of a covenant), then the unenforceable covenant (or part) will be eliminated from this Agreement to the extent necessary to permit the remaining separate covenants (or portions) to be enforced. In the event that the provisions of this section are deemed to exceed the time, geographic, or scope limitations permitted by law, then the provisions will be reformed to the maximum time, geographic, or scope limitations permitted by law.

The nature of the Company's business is such that if Employee were to become employed by, or substantially involved in, the business of a competitor to the Company, it would be difficult not to rely on or use Confidential Information. Therefore, Employee      enters into this Agreement to reduce the likelihood of disclosure of Confidential Information. Employee acknowledges that the limitations of time, geography, and scope of activity agreed to above are reasonable because, among other things, (a) the Company is engaged in a highly competitive industry, (b) Employee will have access to Confidential Information, including but not limited to, the Company's trade secrets, know-how, plans, and strategy (and in particular, the competitive strategy of the Company), (c) in the event Employee's employment with the Company ends, Employee will be able to obtain suitable and satisfactory employment in my chosen profession without violating this Agreement, and (d) these limitations are necessary to protect Confidential Information, and the goodwill of the Company.

"Geographic Area" means anywhere in the world where the Company conducts business.

4.2    **No Conflicts.** Employee will refrain from any activity, and will not enter into any agreement or make any commitment, that is inconsistent or incompatible with Employee's obligations under this Agreement. Employee represents and warrants that Employee is not subject to any contract or duty that would be breached by Employee's entering into or performing Employee's obligations under this Agreement or that is otherwise inconsistent with this Agreement. Employee will not disclose to Company and will not induce Company to use any confidential or proprietary information of any third party without express prior written consent of the Manager.

4.3    **Defend Trade Secrets Act.** Pursuant to the Defend Trade Secrets Act of 2016, Employee acknowledges that Employee shall not have criminal or civil liability under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if Employee files a lawsuit for retaliation by the Company for reporting a suspected violation of law, Employee may disclose the trade secret to Employee's attorney and may use the trade secret information in the court proceeding, if Employee (X) files any document containing the trade secret under seal; and (Y) does not disclose the trade secret, except pursuant to court order.

5.    GENERAL PROVISIONS.

5.1    **Governing Law and Venue.** This Agreement is governed by the laws of the state of Arizona without reference to any conflict of laws principles that would require the application of the laws of any other jurisdiction. Employee irrevocably consents to the personal jurisdiction of the state and federal courts located in Maricopa County, Arizona, for any suit or action arising from or related to this Agreement, and waives any right Employee may have to object to the venue of such courts. Employee further agrees that these courts will have exclusive jurisdiction over any such suit or action initiated by Employee against Company.

5.2    **Severability.** If any provision of this Agreement is, for any reason, held to be invalid or unenforceable, the other provisions of this Agreement will remain enforceable and the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law.

5.3    **Survival.**    The provisions of this Agreement shall survive the termination of Employee's employment by Company for any reason.

5.4    **No Assignment.** This Agreement and Employee's rights and obligations under this Agreement may not be assigned, delegated, or otherwise transferred, in whole or in part, by operation of law or otherwise, by Employee without Company's express prior written consent. Any attempted assignment, delegation, or transfer in violation of the foregoing will be null and void. Company may assign this Agreement, or any of its rights under this Agreement to any third party with or without Employee's consent.

5.5    **Notices.** Each party must deliver all notices or other communications required or permitted under this Agreement in writing to the other party at the address listed on the signature page, by courier, by certified or registered mail (postage prepaid and return receipt requested), or by a nationally-recognized express mail service. Notice will be effective upon receipt or refusal of delivery. If delivered by certified or registered mail, notice will be considered to have been given five (5) business days after it was mailed, as evidenced by the postmark. If delivered by courier or express mail service, notice will be considered to have been given on the delivery date reflected by the courier or express mail service receipt. Each party may change its address for receipt of notice by giving notice of the change to the other party.

5.6    **Injunctive Relief.** Employee acknowledges that, because Employee's services are personal and unique and because Employee will have access to the Confidential Information of Company, any breach of this Agreement by Employee would cause irreparable injury to Company for which monetary damages would not be an adequate remedy and, therefore, will entitle Company to injunctive relief (including specific performance). The rights and remedies provided to each party in this Agreement are cumulative and in addition to any other rights and remedies available to such party at law or in equity.

5.7    **Legal Fees.** The prevailing party in any

litigation between the parties relating to this Agreement will be entitled to recover such party's reasonable attorneys' fees and court costs, in addition to any other relief that such party may be awarded.

5.8    **Construction.** Section headings are included in this Agreement merely for convenience of reference; they are not to be considered part of this Agreement or used in the interpretation of this Agreement. When used in this Agreement, "including" means "including without limitation." Whenever Company's consent or approval is required under this Agreement, Company may grant or deny its consent or approval in its sole and absolute discretion. No rule of strict construction, including *contra proferentem*, will be applied in the interpretation or construction of this Agreement.

5.9    **Waiver.** All waivers must be in writing and signed by the party to be charged. Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of any other provision or of such provision on any other occasion.

5.10    **Export.** Employee agrees not to export, re-export, or transfer, directly or indirectly, any United States technical data acquired from Company or any products utilizing such data, in violation of the United States export laws or regulations.

5.11    **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall be taken together and deemed to be one instrument.

**Entire Agreement.** This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior communications between us with respect to such matters. No modification of or amendment to this Agreement, or any waiver of any rights under this Agreement, will be effective unless in writing and signed by Employee and Company.

[SIGNATURE PAGE FOLLOWS]

This Employee Confidential Information and Inventions Assignment Agreement shall be effective as of the Effective Date.

COMPANY: QWICK, Inc                     EMPLOYEE:

ACCEPTED AND AGREED:                    ACCEPTED AND AGREED:

                                        I HAVE READ, UNDERSTAND, AND ACCEPT
                                        THIS AGREEMENT AND HAVE BEEN GIVEN THE
                                        OPPORTUNITY TO REVIEW IT WITH
                                        INDEPENDENT LEGAL COUNSEL.

*Jamie Baxter*                          *Timothy M. Jacobs*
_____             _____
        (Signature)                              (Signature)

By: Jamie Baxter                        Name: _____
Title: Co-Founder & CEO
        9/2/2021                                9/2/2021
Dated: _____      Dated: _____

## EXHIBIT A

### PRIOR COMPANY-RELATED INVENTIONS

1.     **Prior Company-Related Inventions Disclosure.**  The following is a complete list of all Prior Company-Related Inventions, as provided in the section titled "Prior Inventions" of the Employee Confidential Information and Inventions Assignment Agreement to which this exhibit is attached:

☐     None.

       See immediately below:

N/A    _____

       _____

Exhibit D

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

## SEVERANCE AGREEMENT
## AND GENERAL RELEASE OF ALL CLAIMS

This Severance Agreement and General Release of All Claims ("Agreement") is made by and between Qwick, Inc. ("Qwick" or the "Company") and _____ Timothy Jacobs _____ ("Employee") (collectively, the "Parties"). Employee's at-will employment with Qwick will end or has ended on June 13, 2023 ("Separation Date") as a result of a corporate layoff.

Qwick wishes to provide Employee with assistance in transitioning to other employment after the Separation Date. In addition, the Parties desire to settle all claims, disputes and issues that have, or could have, been raised in relation to Employee's employment with Qwick or the decision to end that employment, and/or arising out of or in any way related to the acts, transactions or occurrences between Employee and Qwick.

THEREFORE, in consideration of the promises and mutual covenants set forth in this Agreement, it is agreed by and between Qwick and Employee as follows:

1) **Severance Package (Consideration)**

In exchange for the promises set forth in this Agreement, Qwick will pay Employee a total severance package of _____ $11,850.11 _____, less tax-related deductions and withholdings (the "Severance Package"). The Severance Package consists of the following sums:

(a) **Severance Weeks.** Qwick will pay Employee the total amount of _____ 11,345.19 _____, which represents __5__ weeks of Employee's pay (the "Severance Weeks Payment").

(b) **Payment in Lieu of Health Care Coverage.** Qwick will also pay Employee the total amount of _____ $504.92 _____, which represents __1__ months of medical, dental, and/or vision health care continuation premiums (the "Health Care Premium Payment").

(c) The Severance Weeks Payment and the Health Care Premium payment together are the "Severance Package."

The Severance Package will be paid within fifteen (15) calendar days of the Effective Date of this Agreement. The Severance Payment will be reported as wages to the Employee and will be included in the Employee's Form W-2.

2) **No Other Pay or Benefits; Sufficiency of Consideration.**

Employee acknowledges and agrees that the benefits provided in Section 1 are in excess of that which is otherwise due to Employee, and as such, constitute adequate

1

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

legal consideration for the promises and representations made by Employee in this Agreement.

### 3) Unemployment

To the extent permitted by applicable law, Qwick agrees that it will not contest any claim Employee makes for unemployment compensation benefits, although Qwick will respond truthfully to any inquiry from any state unemployment agency when required to do so. Employee understands that the decision to award or deny unemployment compensation is made by the applicable state agency, and Qwick does not guarantee that Employee will receive any such benefits.

### 4) General Release of Claims

(a) **General Release.** In consideration for receiving the amounts set forth in Section 1 of this Agreement and other good and valuable consideration as provided in this Agreement, Employee unconditionally, irrevocably and absolutely releases and discharges Qwick, and its past and present parent entities, divisions, subsidiaries (including Labor Force Group, LLC and Flex Affiliate Staffing Technology, LLC), affiliates, and its and their past and present owners, officers, directors, shareholders, agents, representatives, predecessors, successors, assigns, attorneys, employees, contractors, insurers, reinsurers, and all persons and entities acting for, through, by, under or in concert with any of them, each in their personal and official capacities (collectively, the "Released Parties") from all claims, demands, debts, damages and liabilities of every name and nature, known or unknown that, as of the date Employee signs this Agreement, they have, may have, ever had, now claim to have or ever claimed to have had against any or all of the Released Parties ("Claims"). This release includes, without limitation, all Claims:

- relating to Employee's employment by Qwick, and the decision to end Employee's employment with Qwick;
- of retaliation, discrimination or harassment under federal, state or local law (including, without limitation, claims under the Americans with Disabilities Act, the Family Medical Leave Act, Title VII of the Civil Rights Act of 1964, and/or Sections 1981 through 1988 of Title 42 of the United States Code, as each of these may be amended);
- of violations of the National Labor Relations Act, the Employee Retirement Income Security Act, the Immigration Reform and Control Act, the Worker Adjustment and Retraining Act, the Equal Pay Act, the Vocational Rehabilitation Act, the Genetic Information Nondiscrimination Act of 2008, the Uniform Services Employment and Reemployment Rights Act, the Fair Credit Reporting Act, and/or the Occupational Safety and Health Act;
- for wages, salary, overtime, commissions, severance, bonuses, incentive compensation, paid time off or any other compensation or benefits of any type;

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

- arising under tort, contract, or quasi-contract law, including but not limited to claims of breach of an express or implied contract, breach of the implied covenant of good faith and fair dealing, wrongful or retaliatory discharge, fraud, defamation, negligent or tortious interference with contract or prospective economic advantage, discrimination, harassment, hostile work environment, retaliation, negligent or intentional infliction of emotional distress, invasion of privacy, false imprisonment, nonphysical injury, personal injury or sickness, promissory estoppel, detrimental reliance, malicious prosecution, or any other harm;
- for monetary damages or equitable relief, including but not limited to back pay, front pay, compensatory damages, reinstatement, experts' fees, medical fees or expenses, costs and disbursements, punitive damages, liquidated damages, penalties, attorneys' fees and costs, and/or injunctive relief.

(b) **State Law Addendum.** Employee acknowledges and agrees that they have read and understand the State Law Addendum attached as Attachment A to this Agreement, and as set forth more fully in Section 12 of this Agreement. Employee agrees that the applicable State Law Addendum provisions modify or clarify terms of this Agreement based upon the state(s) law where the Employee worked for Qwick.

(c) **Excluded Claims.** The Parties acknowledge that this General Release is not intended to bar any claims: (i) that, by statute, may not be waived by private agreement, such as claims for workers' compensation benefits or unemployment insurance benefits; (ii) that may arise after the date Employee signs this Agreement; (iii) to enforce this Agreement; or (iv) related to vested rights under a Qwick 401(k) plan.

(d) **No Pending Claims.** Employee affirms that they have not filed or caused to be filed any Claim against Qwick, and they are not presently a party to any Claim against Qwick. Employee further affirms that they have been paid all wages due to them for the work they have done at Qwick, and they are not aware of any facts that would give rise to a claim that they are due additional wages or other compensation, including but not limited to overtime compensation. Employee further confirms they have been provided all leaves of absences required pursuant to applicable law, including but not limited to under the Family and Medical Leave Act and any state law equivalents.

(e) **Breadth of Release; Severability.** Employee intends this General Release of Claims to be final and complete and not subject to any claim of mistake. **Employee executes this release with full knowledge that it covers all possible claims against the Released Parties to the fullest extent permitted by law.** Employee acknowledges that Employee may discover facts or law different from, or in addition to, the facts or law that Employee knows or believes to be true with respect to the claims released in this Agreement and agrees, nonetheless, that this Agreement and the General Release of Claims contained in it shall be, and shall remain, effective in

3

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

all respects notwithstanding such different or additional facts or Employee's discovery of them. Employee agrees that if any provision of this General Release of Claims is found to be unenforceable, it shall not affect the enforceability of the remaining provisions, and all remaining provisions shall be enforceable to the fullest extent permitted by law.

5) **Non-Interference**

(a) **Rights related to Government Agencies.** Employee understands that nothing in this Agreement (including the continuing confidentiality, arbitration, and non-disparagement provisions in Sections 6, 7 and 8) or any Prior Employment Agreement (as defined in Section 6, below) limits Employee's ability to file a charge or participate or cooperate in an investigation or proceeding with the United States Equal Employment Opportunity Commission, or similar state or local fair employment practices agencies. Furthermore, nothing in this Agreement or any Prior Employment Agreement limits Employee's ability, without prior authorization from or notification to Qwick, to report possible violations of federal, state, or local law or regulation to any other government agency or entity, including but not limited to the Occupational Safety and Health Administration, the Department of Justice, the Securities and Exchange Commission (the "SEC"), the Congress, and/or any agency Inspector General, or make other disclosures that are protected under the whistleblower provisions of federal, state, or local law or regulation; or to communicate directly with, respond to any inquiry from, or provide testimony before, to the extent applicable, the SEC, the Financial Industry Regulatory Authority, any other self-regulatory organization, or any other federal, state, or local regulatory authority, regarding this Agreement or its underlying facts or circumstances.

(b) **Award for Information.** Employee understands and acknowledges that, as set forth more fully in Section 4 of this Agreement, Employee completely waives any right to receive any individual relief, including monetary damages, in connection with any released Claims. Notwithstanding the foregoing, this Agreement does not limit Employee's right to receive a monetary award for information provided to the SEC or to any other government agency where the waiver of such award is prohibited by law.

6) **Continuing Obligations & Confidentiality**

Employee agrees to continue to comply with the obligations set forth in the Employe Confidential Information and Inventions Assignment Agreement previously executed by Employee (a "Prior Agreement"), if any, including, but not limited to, promises not to disclose and to protect all confidential and proprietary information of Qwick.

If Employee did not sign a Prior Agreement, Employee agrees that at all times during and after the period of Employee's employment at Qwick, Employee will (a) hold all Confidential Information (as defined below) in strict trust and confidence, (b) refrain from

4

5.

using or permitting others to use Confidential Information in any manner or for any purpose not expressly permitted or required by this Agreement and (c) refrain from disclosing and permitting others to disclose any Confidential Information to any third party without obtaining the express written consent of the Qwick's General Counsel. Employee hereby assigns to Company any rights Employee may have or acquire in any and all Confidential Information and recognizes that all Confidential Information shall be the sole and exclusive property of Company and its assigns. The term "Confidential Information" shall mean any and all technical and non-technical confidential knowledge, data or information related to Company's Business (as defined below), including without limitation: (a) trade secrets, inventions, ideas, processes, computer source and object code, data, formulae, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques; (b) information regarding products, services, plans for research and development, marketing and business plans, budgets, financials statements, contracts, prices, suppliers and customers; (c) information regarding the skills and details of Company's employees, contractors and any other service providers of Company; and (d) the existence of any business discussions, negotiations or agreements between Company and any third party.

Employee understands that nothing in any Prior Agreement or Section 6 prevents Employee from discussing or disclosing the information as set forth in Section 5(a) of this Agreement, on Employee's to Rights related to Governmental Agencies. Further, Employee agrees that the Arbitration Agreement in Section 7 of this Agreement, below, supersedes any previously-signed arbitration agreement between the Parties, as set forth in Section 7(f).

7) **Arbitration Agreement**

(a) Employee and Qwick agree that, other than claims not subject to mandatory binding pre-dispute arbitration as a matter of law (for example, sexual assault and sexual harassment disputes as defined by the Federal Arbitration Act), any and all claims or disputes arising out of or relating to Employee's relationship with Qwick, including but not limited to claims to enforce this Agreement, shall be resolved by final and binding individual arbitration before a single arbitrator in the metropolitan area closest to the location where Employee worked for Qwick, and shall be conducted under the Judicial Arbitration and Mediation Services (JAMS) Streamlined Arbitration Rules & Procedures, which can be reviewed at http://www.jamsadr.com/rules-streamlined-arbitration.

(b) Employee and Qwick each acknowledge that by agreeing to this arbitration procedure, Employee and Qwick waive the right to resolve any such dispute, claim or demand through a trial by jury or judge. All claims or disputes must be submitted to arbitration on an individual basis and not as a representative, class and/or collective action other than an individual one. Any issue concerning the validity of this proceeding on behalf of other individuals.

DocuSign Envelope ID: 2784D09C-B9F3-43CA-BA16-1DEA789D056

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

representative, class and/or collective action waiver must be decided by a court, and if for any reason this waiver is found to be unenforceable, the representative, class and/or collective action claim may only be heard in court and may not be arbitrated. Employee understands that by agreeing to individual arbitration as set forth in this Agreement, Employee is electing not to institute or participate in class, collective, or group proceedings, whether in court, in arbitration, or in any other forum, to the extent permitted by law.

(c) BY AGREEING TO INDIVIDUAL ARBITRATION, AND UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH PARTY FULLY UNDERSTANDS AND AGREES THEY ARE GIVING UP CERTAIN RIGHTS OTHERWISE AFFORDED TO THEM, INCLUDING BUT NOT LIMITED TO THE RIGHT TO A JURY OR COURT TRIAL AND THE RIGHT TO BRING ANY CLAIM AS A CLASS OR COLLECTIVE ACTION, TO THE GREATEST EXTENT ALLOWABLE UNDER APPLICABLE LAW.

(d) The arbitrator, and not a court, shall be authorized to determine arbitrability, except as provided herein or otherwise required by federal law. Claims will be governed by their applicable statutes of limitations. The arbitrator may in its discretion award attorneys' fees to the prevailing party in accordance with governing law. This arbitration agreement shall be construed and interpreted in accordance with the Federal Arbitration Act.

(e) This arbitration agreement does not cover any action which seeks only emergency, temporary or preliminary injunctive relief (including a temporary restraining order) in a court of competent jurisdiction in order to preserve the status quo.

(f) As set forth in Section 5 above, this arbitration provision does not prevent Employee from contacting, or participating in any investigation or proceeding conducted by, the EEOC, or other federal, state, or local agency.

(g) The arbitration provision set forth in Section 7 of this Agreement supersedes any prior arbitration agreement between the Employee and Qwick, but if this entire Section 7 or any portion hereof is invalidated on any ground by any court, arbitrator or tribunal of competent jurisdiction, Employee shall be bound by their prior arbitration agreement with Qwick, if any.

8)  **Non-Disparagement**

Employee agrees that Employee will not, directly or indirectly, make any negative, derogatory or disparaging oral, written, or electronic statements about the Company, the Releasees, or their products and, services, or Employees employment with or separation from employment with the Company, or do anything which damages the Company, the Releasees or any of their products and services, reputation, goodwill, financial status, or business or client relationships. Employee also agrees not to post any such statements on the internet or any blog or social networking site, including, but

6

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

not limited to, Facebook, Glassdoor, LinkedIn, or any other internet site or platform. Nothing in this Section 8 shall prohibit Employee from (a) providing truthful information in response to a subpoena or other legal process, or (b) discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that Employee has reason to believe is unlawful.

## 9) No Admission of Liability

Nothing herein shall be construed to be an admission by Qwick or any of the Released Parties of any wrongdoing or noncompliance with any federal, state, city, or local rule, ordinance, constitution, statute, contract, public policy, wage and hour law, wage payment law, tort law, common law, or of any other unlawful conduct, liability, wrongdoing, or breach of any duty whatsoever.

## 10) Full Defense

This Agreement may be pled as a full and complete defense to, and may be used as a basis for an injunction against, any action, suit or other proceeding that may be prosecuted, instituted or attempted by Employee in breach hereof.

## 11) Applicable Law

Except as to the Arbitration Agreement contained in Section 7, above, which shall be interpreted in accordance with the Federal Arbitration Act, the validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the state(s) in which Employee worked for Qwick, without regard to conflicts of laws principles.

## 12) Time for Consideration, Consultation; Effective Date

Employee will have fourteen (14) days from the date of receipt of this Agreement (until June 26, 2023) to sign this Agreement (the "Consideration Period"). Any modifications to this Agreement, whether material or immaterial, will not restart the Consideration Period. Qwick hereby advises Employee to consult with an attorney prior to executing this Agreement.

## 13) State Law Addendum; Entire Agreement

Employee represents that they have read and understand this Agreement as well as applicable sections of the State Law Addendum attached as Attachment A to this Agreement. The State Law Addendum is incorporated into this Agreement by reference and modifies and/or clarifies certain of the provisions in this Agreement based on laws of the states and/or municipalities where Employee worked for Qwick. This Agreement, including the Attachments, constitutes the entire agreement between Employee and

7

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

Qwick, and supersedes any previous agreements or understandings between Employee and Qwick, except as otherwise provided in Sections 6 and 7 of this Agreement.

### 14) Return of Qwick Property

Employee understands and agrees that all Qwick property must be returned to Qwick. By signing this Agreement, Employee represents and warrants that Employee has returned all property, data and information belonging to Qwick and reaffirms that Employee will not use or disclose to others any confidential or proprietary information of Qwick or the Released Parties. If any duplicates of files or documents that contain Qwick information are stored on any computer or device that is Employee's property after the Separation Date, Employee commits to inform Qwick immediately and to take any steps Qwick deems necessary to delete and finally purge any Qwick information from Employee's devices.

### 15) Severability; Interpretation of Agreement

(a) If any portion or provision of this Agreement (including, without limitation, any portion or provision of any section of this Agreement) shall to any extent be declared illegal or unenforceable by an arbitrator or court of competent jurisdiction, then the remainder of this Agreement, or the application of such portion or provision in circumstances that are not declared illegal or unenforceable, shall continue to be valid and enforceable to the fullest extent permitted by law.

(b) No waiver of any provision of this Agreement shall be effective unless made in writing and signed by the waiving party. The failure of either of the Parties to require the performance of any term or obligation of this Agreement, or the waiver by either Party of any breach of this Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach. This Agreement may only be amended or modified by a written statement signed by both parties.

(c) In the event of any dispute, this Agreement is intended by the parties to be construed as a whole, to be interpreted in accordance with its fair meaning, and not to be construed strictly for or against either Employee or Qwick.

### 16) Counterparts

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be taken to be an original, but all of which together shall constitute one and the same document. A scanned or electronic signature shall be considered an original for all purposes.

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

To agree to and accept this Agreement, Employee must sign and date this Agreement via Docusign before the end of the Consideration Period, **by June 28, 2023.** If Employee does not sign this Agreement by the end of the Consideration Period, this offer will expire, and Employee will not receive the severance benefits described herein.

The foregoing is agreed to and accepted by:

_____                    _____
                Timothy Jacobs                                        Date


*Dana Barbeau*
_____                    6/13/2023
                General Counsel
                Qwick, Inc.

9

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

**Attachment A**
**State Law Addendum**

---

**If Employee worked for Qwick in Arizona:**
Claims shall include, without limitation, those arising under the following laws: the Arizona Revised States, the Arizona Constitution and state administrative rulings related thereto.

**If Employee worked for Qwick in California:**

Claims shall include, without limitation, those arising under the following laws:  the California Labor Code, the California WARN Act, all applicable California Industrial Welfare Commission Wage Orders, all as amended, and the California Fair Employment and Housing Act, including any claims for waiting time penalties or any other types of penalties.

In addition, the Agreement shall be construed in the broadest sense possible and shall be effective as a prohibition to all claims, charges, actions, suits, demands, obligations, damages, injuries, liabilities, losses, and causes of action of every character, nature, kind or description, known or unknown, and suspected or unsuspected that you may have against the Released Parties. Employee hereby expressly acknowledges that they are aware of the existence of California Civil Code § 1542 and its meaning and effect. Employee expressly acknowledges that they have read and understand the following provision of that Section which provides:

> A GENERAL AGREEMENT DOES NOT EXTEND TO
> CLAIMS THAT THE CREDITOR OR RELEASING PARTY
> DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR
> HER FAVOR AT THE TIME OF EXECUTING THE
> AGREEMENT AND THAT, IF KNOWN BY HIM OR HER,
> WOULD HAVE MATERIALLY AFFECTED HIS OR HER
> SETTLEMENT WITH THE DEBTOR OR RELEASED
> PARTY.

Employee waives any right to benefits that they may have under California Civil Code § 1542 to the fullest extent they may do so lawfully. Employee further acknowledges that they may later discover facts different from or in addition to those facts now known to them or believed by them to be true with respect to any or all of the matters covered by the Agreement, and Employee agrees that the Agreement nevertheless shall remain in full and complete force and effect.

Nothing in this Agreement is intended to prohibit Employee from competing against the Company, provided Employee does so in good faith and in connection with a legitimate

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

business interest, or exercising any right or privilege protected by Cal. Civ. Proc. Code §§ 1001, *et seq.* "In addition, nothing in this Agreement prevents you from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful."

**If Employee worked for Qwick in Colorado:**

Claims released shall include, without limitation, those arising under the following laws: any federal, state, or municipal law, including the Colorado Anti-Discrimination Act, and other statutes and the common law of the state of Colorado, including claims for tort, breach of express or implied employment contract, wrongful discharge, intentional infliction of emotional distress, and defamation or injuries incurred on the job or on separation from employment.

Nothing in the Agreement shall affect any Claims under the Colorado Employment Security Act or the Colorado Wage Act.

**If Employee worked for Qwick in Florida:**
Claims released shall include, without limitation, those arising under the following laws: the Florida Civil Rights Act (§§ 760.01 to 760.11, Fla. Stat.), Florida Whistleblower Protection Act (§§ 448.101 to 448.105, Fla. Stat.), Florida Workers' Compensation Retaliation provision (§ 440.205, Fla. Stat.), Florida Minimum Wage Act (§ 448.110, Fla. Stat.), Article X, Section 24 of the Florida Constitution (Fla. Const. art. X, § 24), Florida Fair Housing Act (§§ 760.20 to 760.37, Fla. Stat.), breach of implied or express contract, intentional interference with a business relationship, negligent or intentional infliction of emotional distress, negligent and intentional misrepresentation, libel, slander, defamation, assault, battery, false imprisonment, invasion of privacy, fraudulent inducement, fraudulent concealment, constitutional violation, wrongful termination, or discharge.

For the avoidance of doubt, the Agreement should not be interpreted as a waiver, agreement or other reduction of any individual's unemployment benefits rights or workers' compensation benefits rights under Florida law.

**If Employee worked for Qwick in Georgia:**

Claims released shall include, without limitation, those arising under the following laws: the Georgia Fair Employment Practices Act (if applicable), the Georgia Equal Pay Act, the Georgia Equal Employment for People with Disabilities Code, and all other state and local laws of Georgia that may be lawfully waived by agreement. This release shall not include any claim or claims that cannot, as a matter of law, be released by private agreement.

For the avoidance of doubt, the Agreement should not be interpreted as a waiver,

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

agreement or other reduction of any individual's unemployment benefits rights under Georgia law.

**If Employee worked for Qwick in Illinois:**

Claims released shall include, without limitation, those arising under the following laws: Common law or statutory claims for breach of contract, breach of the implied covenant of good faith and fair dealing, libel, slander, infliction of emotional distress, wrongful discharge, violation of public policy, retaliation, defamation, negligent retention, negligent supervision, negligent hiring, promissory estoppel or reliance, fraud, interference with prospective economic advantage; claims under the Chicago Human Rights Ordinance, Cook County Human Rights Ordinance, Illinois Human Rights Act, as amended, the Illinois Constitution; and any other claims relating to Employee's employment with the Employer.

Nothing in the Agreement shall affect any Claims under the Employee Credit Privacy Act, the Illinois Wage Payment and Collection Act, or the Illinois Unemployment Insurance Act.

Nothing in the Agreement shall prevent Employee from making truthful statements or disclosures regarding unlawful employment practices.

**If Employee worked for Qwick in New York:**

Claims released shall include, without limitation, those under the New York Executive Law, §290, *et seq.*, the discrimination and retaliation sections of the New York State disability benefits and workers' compensation laws, New York Labor Law §§740 and 741, the NYC Human Rights Law, §8-101-1103, the New York Human Rights Law, New York Executive Law § 296 *et seq.*, New York Labor Law §7860-860, New York Labor Law §190-199A, New York Labor Law §201-d, New York Workers' Comp. Law, §125, New York Civ. Rights Law §40-45, New York City Administrative Code § 8-101 *et seq.*, and the New York Correction Law Article 23.

**If Employee worked for Qwick in Pennsylvania:**

Claims released shall include, without limitation, those arising under the following laws: wrongful discharge in violation of public policy, discrimination in violation of the Pennsylvania Human Relations Act, wrongful discharge, discrimination, retaliation, or other violation of the Pennsylvania Whistleblower Law, and breach of express or implied contract.

**If Employee worked for Qwick in Texas:**

Claims released shall include, without limitation, those pursuant to common law,

DocuSign Envelope ID: 2764D09C-B9F3-43CA-BA16-1DE2A9789D56

contract, tort, or statute, including without limitation all claims under the Texas Labor Code, specifically including the Texas Payday Law, the Texas Anti-Retaliation Act, Chapter 21 of the Texas Labor Code, and the Texas Whistleblower Act, and any and all amendments to the aforementioned laws.

**If Employee worked for Qwick in Utah:**
Claims shall include, without limitation, those arising under the following laws: the Utah Code, the Utah Administrative Code, and Utah state administrative rulings related thereto.

13

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME: Central Justice Center | **FOR COURT USE ONLY**<br>**FILED**<br>*SUPERIOR COURT OF CALIFORNIA*<br>*COUNTY OF ORANGE*<br><br>**Sep 13, 2023**<br>Clerk of the Superior Court<br>By: G. GALON, Deputy |
|---|---|
| PLANTIFF: Timothy Jacobs | |
| DEFENDANT: Qwick, Inc., | |
| Short Title: JACOBS VS. QWICK, INC., | |

| NOTICE OF HEARING<br>CASE MANAGEMENT CONFERENCE | CASE NUMBER:<br>30-2023-01348392-CU-OE-CJC |
|---|---|

Please take notice that a(n), <u>Case Management Conference</u> has been scheduled for hearing on <u>02/13/2024</u> at <u>09:00:00 AM</u> in Department <u>C16</u> of this court, located at <u>Central Justice Center</u>.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

**IMPORTANT:** Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

**IMPORTANTE:** Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

**QUAN TRỌNG:** Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giải đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court, By: _C. Cardin_ , Deputy

**NOTICE OF HEARING**

Page: 1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Central Justice Center
700 W. Civic Center DRIVE
Santa Ana 92701

**SHORT TITLE:** JACOBS VS. QWICK, INC.,

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>**30-2023-01348392-CU-OE-CJC** |
| --- | --- |

I certify that I am not a party to this cause. I certify that a true copy of the above Notice of Hearing has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at Santa Ana, California, on 09/13/2023. Following standard court practice the mailing will occur at Sacramento, California on 09/14/2023.

Clerk of the Court, by: _C. Cenior_____ , Deputy

LATTER LAW GROUP, APC
8383 WILSHIRE BOULEVARD # SUITE 830
BEVERLY HILLS, CA 90211

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 2

V3 1013a (June 2004)                                                                                     Code of Civil Procedure , § CCP1013(a)

Electronically Filed by Superior Court of California, County of Orange, 09/06/2023 04:12:58 PM.
30-2023-01348392-CU-OE-CJC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By G. Galon, Deputy Clerk.

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Daniel S. Latter (SBN 99848) <br> Latter Law Group, 8383 Wilshire Boulevard, Suite 830, Beverly Hills, CA 90211 <br> TELEPHONE NO.: (323) 944-0611  FAX NO. *(Optional):* <br> E-MAIL ADDRESS: danlatterlaw@gmail.com <br> ATTORNEY FOR *(Name):* Plaintiff, Timothy Jacobs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
TIMOTHY JACOBS v. QWICK, INC., a Delaware limited liability company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited <br> (Amount demanded exceeds $25,000) | [ ] Limited <br> (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | | 30-2023-01348392-CU-OE-CJC |
| | | | JUDGE: DEPT.: | Judge David A. Hoffer |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Fraud (16) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | |
| **Employment** | [ ] Writ of mandate (02) | |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [X] Other employment (15) | | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify):* 10, including breach of contract, wrongful termination, declaratory and injunctive relief
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 25, 2023

Daniel S. Latter
_____
(TYPE OR PRINT NAME)                                       ▶  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> *www.courts.ca.gov* |
|---|---|---|

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (not asbestos or
  toxic/environmental) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (not civil
  harassment) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (not medical or legal)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (not unlawful detainer
      or wrongful eviction)
  Contract/Warranty Breach–Seller
    Plaintiff (not fraud or negligence)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (not provisionally
  complex) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (not eminent
    domain, landlord/tenant, or
    foreclosure)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (arising from provisionally complex
  case type listed above) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (non-
    domestic relations)
  Sister State Judgment
  Administrative Agency Award
    (not unpaid taxes)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (not specified
  above) (42)
  Declaratory Relief Only
  Injunctive Relief Only (non-
    harassment)
  Mechanics Lien
  Other Commercial Complaint
    Case (non-tort/non-complex)
  Other Civil Complaint
    (non-tort/non-complex)
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (not specified
  above) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

For your protection and privacy, please press the Clear
This Form button after you have printed the form.    

BA20230340728

B1538-8899 02/28/2023 8:20 AM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20230340728 |
| Date Filed: 2/28/2023 |

---

**Entity Details**

| | |
| --- | --- |
| Corporation Name | QWICK, INC. |
| Entity No. | 4207425 |
| Formed In | DELAWARE |

**Street Address of Principal Office of Corporation**

| | |
| --- | --- |
| Principal Address | 3550 NORTH GOLDWATER BLVD. #1154 SCOTTSDALE, AZ 85251 |

**Mailing Address of Corporation**

| | |
| --- | --- |
| Mailing Address | 3550 NORTH GOLDWATER BLVD. #1154 SCOTTSDALE, AZ 85251 |
| Attention | |

**Street Address of California Office of Corporation**

| | |
| --- | --- |
| Street Address of California Office | None |

**Officers**

| Officer Name | Officer Address | Position(s) |
| --- | --- | --- |
| JAMIE BAXTER | 3550 NORTH GOLDWATER BLVD. #1154 SCOTTSDALE, AZ 85251 | Chief Executive Officer |
| Joshua Sherko | 3550 NORTH GOLDWATER BLVD. #1154 SCOTTSDALE, AZ 85251 | Secretary, Chief Financial Officer |

**Additional Officers**

| Officer Name | Officer Address | Position | Stated Position |
| --- | --- | --- | --- |
| None Entered | | | |

**Agent for Service of Process**

| | |
| --- | --- |
| California Registered Corporate Agent (1505) | CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERV Registered Corporate 1505 Agent |

**Type of Business**

| | |
| --- | --- |
| Type of Business | ON DEMAND STAFFING PLATFORM FOR FOOD AND |

**Email Notifications**

| | |
| --- | --- |
| Opt-in Email Notifications | No, I do NOT want to receive entity notifications via email. I prefer notifications by USPS mail. |

**Labor Judgment**

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒  By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

_Joshua Sherko_                                    _02/28/2023_
Signature                                          Date

B1538-8900 02/28/2023 8:20 AM Received by California Secretary of State

| | |
|---|---|
| Initial Filing Date | 10/22/2018 |
| Status | Active |
| Standing - SOS | Good |
| Standing - FTB | Good |
| Standing - Agent | Good |
| Standing - VCFCF | Good |
| Formed In | DELAWARE |
| Entity Type | Stock Corporation - Out of State - Stock |
| Principal Address | 3550 NORTH GOLDWATER BLVD. #1154 SCOTTSDALE, AZ 85251 |
| Mailing Address | 3550 NORTH GOLDWATER BLVD. #1154 SCOTTSDALE,AZ85251 |
| Statement of Info Due Date | 10/31/2023 |
| Agent | 1505 Corporation CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE |
| CA Registered Corporate (1505) Agent Authorized Employee(s) | BECKY DEGEORGE 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA KOY SAECHAO 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA LAI SAEVANG 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA NICOLE STAUSS 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA JENN BAUTISTA 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA TRUDY DESBIENS 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA REBECCA VANG 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA WENDY HARRIS 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA MELISSA DEKOVEN 2710 |

GATEWAY OAKS DRIVE, SACRAMENTO, CA CAROLYN VALLE 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA KACI RANSOM 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA KELLI SHORTTE 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA ANNETTE KUHLMAN 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA BREJET STEPHENS 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA CRYSTAL CHAPMAN 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA JANETTE MCINTYRE 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA JEROME SUAREZ 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA SAMANTHA WILTZ 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA PARID KURBINI 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
INFORMATION PACKAGE

NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

   (1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

   (2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any   court   staff responsible for providing parties with assistance regarding ADR.

   (3) Information about the availability of local dispute resolution   programs   funded under the Dispute Resolutions Program Act   (DRPA),   in   counties   that   are participating in the DRPA. This information may take the form of a list of   the applicable programs or directions for contacting the county's DRPA coordinator.

   (4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its website as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

ADR Information

Introduction.

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

Save Time. A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

Save Money. When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

Increase Control Over the Process and the Outcome. In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

Preserve Relationships. ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

Increase Satisfaction. In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

Improve Attorney-Client Relationships. Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

Loss of protections. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

Less discovery. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

Additional costs. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Effect of delays if the dispute is not resolved. Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

Arbitration. In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> Cases for Which Arbitration May Be Appropriate. Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> Cases for Which Arbitration May Not Be Appropriate. If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

Mediation. In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> Cases for Which Mediation May Be Appropriate. Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> Cases for Which Mediation May Not Be Appropriate. Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

Neutral Evaluation. In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> Cases for Which Neutral Evaluation May Be Appropriate. Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> Cases for Which Neutral Evaluation May Not Be Appropriate. Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

Settlement Conferences. Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, at 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Low cost mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, contact:

- OC Human Relations (714) 480-6575, mediator@ochumanrelations.org
- Waymakers (949) 250-4058

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

| ATTORNEY OR PARTY WITHOUT ATTORNEY:     STATE BAR NO.:<br>NAME:<br>FIRM NAME:<br>STREET ADDRESS:<br>CITY:                                    STATE:          ZIP CODE:<br>TELEPHONE NO.:                           FAX NO.:<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name): | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500<br>☐ West – 8141 13th Street, Westminster, CA 92683-4593 | **For your protection and privacy, please press the Clear This Form button after you are done printing this form.** |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION | CASE NUMBER: |

Plaintiff(s)/Petitioner(s), _____

_____

and  defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
         ☐ Under section 1141.11 of the Code of Civil Procedure
         ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an Order on Court Fee Waiver (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court, rule 3.720 et seq.

Date:_____     _____     _____
                   (SIGNATURE OF PLAINTIFF OR ATTORNEY)      (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:_____     _____     _____
                   (SIGNATURE OF DEFENDANT OR ATTORNEY)     (SIGNATURE OF DEFENDANT OR ATTORNEY)

Approved for Optional Use                                    California Rules of Court, rule 3.221<br>L1270 (Rev. March 2019)

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br>Daniel S. Latter \| SBN: 099848<br>Latter Law Group, APC<br>8383 Wilshire Blvd Ste 830  Beverly Hills, CA 90211<br><br>TELEPHONE NO.: (323) 944-0611 \| FAX NO. \| E-MAIL ADDRESS *(Optional):* dlatter@earthlink.net<br>ATTORNEY FOR *(Name):* Plaintiff: Timothy Jacobs | FOR COURT USE ONLY |

**Orange County Superior Court**

STREET ADDRESS: 700 Civic Center Drive West

MAILING ADDRESS:

CITY AND ZIP CODE: Santa Ana, CA 92701

BRANCH NAME: Central Justice Center

| | |
|---|---|
| PLAINTIFF: Timothy Jacobs<br><br>DEFENDANT: Qwick, Inc., a Delaware limited liability company | CASE NUMBER:<br>30202301348392CUOECJC |
| **PROOF OF SERVICE OF SUMMONS** | Ref, No. or File No.:<br>Timothy Jacobs v Qwick, Inc. |

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:

   a. ☑ Summons

   b. ☑ Complaint

   c. ☐ Alternative Dispute Resolution (ADR) package

   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*

   e. ☐ Cross-complaint

   f. ☑ other *(specify documents):* **Notice Of Hearing Case Mangement Conference; Civil Case Cover Sheet; Alternative Dispute Resolution (ADR) Information Package;**

3. a. Party served *(specify name of party as shown on documents served):*

   **Qwick, Inc., a Delaware limited liability company**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

   **Rebecca Vang - CSC Agent for Service - Person Authorized to Accept**

   | | | | |
   |---|---|---|---|
   | Age: 28 yrs | Weight: 135 lbs | Hair: Black | Sex: Female |
   | Height: 5'4" | Eyes: - | Race: Asian | |

4. Address where the party was served:   **2710 Gateway Oaks Dr # 150**
   **Sacramento, CA 95833-3505**

5. I served the party *(check proper box)*

   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **9/26/2023**   (2) at *(time):* **2:43 PM**

   b. ☐ **by substituted service.** On *(date):*  at  *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*  **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| | | |
|---|---|---|
| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/451596 |

| PETITIONER: **Timothy Jacobs** | CASE NUMBER: |
|---|---|
| RESPONDENT: **Qwick, Inc., a Delaware limited liability company** | **30202301348392CUOECJC** |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

  (1) on *(date)*:            (2) from *(city)*:

  (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

  (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section)*:

  ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify)*:

c. ☐ as occupant.

d. ☑ On behalf of *(specify)*: **Qwick, Inc., a Delaware limited liability company**
   under the following Code of Civil Procedure section:

| | | |
|---|---|---|
| ☑ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) | |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) | |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) | |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) | |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) | |
| | ☑ other: | |

7. **Person who served papers**
   a. Name: **Katrina Williams - DDS Legal Support**
   b. Address: **2900 Bristol Street  Costa Mesa, CA 92626**
   c. Telephone number: **(714) 662-5555**
   d. **The fee** for service was: **$**
   e. I am:

   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☑ registered California process server:
       (i) ☐ owner    ☐ employee    ☑ independent contractor.
       (ii) Registration No.: **2015-10**
       (iii) County: **Sacramento**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and I** certify that the foregoing is true and correct.

Date: **9/29/2023**

*DDS* ¹
**DDS Legal Support**
**2900 Bristol Street**
**Costa Mesa, CA 92626**
**(714) 662-5555**
**www.ddslegal.com**

_____
      **Katrina Williams**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)             (SIGNATURE)

# PROOF OF SERVICE

I declare that I am over the age of eighteen (18) and not a party to this action.  My business address is 8383 Wilshire Blvd., Suite 830, Beverly Hills, CA 90211.

On October 2, 2023, I served the foregoing document(s) described as:

## PROOF OF SERVICE OF SUMMONS RE QWICK, INC.

on all interested parties, addressed as follows:

### See Attached Service List

(X)   **BY MAIL** as follows:  I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service.  I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Beverly Hills, California.

( )   **BY PERSONAL SERVICE:**  I caused to be delivered such envelope by hand to the above addressee(s).

( )   **BY OVERNIGHT COURIER:**  I am "readily familiar" with the firm's practice of collecting and processing overnight deliveries, which includes depositing such packages in a receptacle used exclusively for overnight deliveries.  The packages were deposited before the regular pickup time and marked accordingly for delivery the next business day.

( )   **BY ELECTRONIC SERVICE:**  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the above-referenced document(s) to be sent at the electronic notification addresses below.

See Service List

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on October 2, 2023 at Beverly Hills, California.

_____
Daniel S. Latter

Proof of Service

1

1

2

**SERVICE LIST**

| Corporation Service Company 2710 Gateway Oaks Drive, #150 Sacramento, CA  95833-3505 | By Mail |
|---|---|
|  |  |
|  |  |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Proof of Service
2